IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

FLORENCE DIVISION

| | |
|---|---|
| Timothy Hamlet,<br><br>                Plaintiff,<br><br>vs.<br><br>Deputy James Page, Williamsburg Sheriff's Department; Sergeant Charlene Wilson, Williamsburg County Sheriff's Department,<br><br>                Defendants. | Civil Action No. 4:04-22051-RBH-WMC<br><br>**REPORT OF MAGISTRATE JUDGE** |

        The plaintiff, who is proceeding *pro se*, seeks relief pursuant to Title 42, United States Code, Section 1983. This matter is before the court on the defendants' motion for summary judgment.

        Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(d), D.S.C., this magistrate judge is authorized to review all pretrial matters in cases filed under Title 42, United States Code, Section 1983, and submit findings and recommendations to the District Court.

        The plaintiff filed this action alleging that the defendants violated his Fourth and Eighth Amendment rights. The plaintiff named as defendants Williamsburg County Sheriff's Department, Sheriff Kelvin Washington, Deputy James Page, and Sergeant Charlene Wilson. He seeks damages in the amount of $1 million for wrongful imprisonment, pain and suffering, and malicious prosecution, and he seeks the termination of employment of Officer Page and Sergeant Wilson (comp. § IV). Defendants Williamsburg County Sheriff's Department and Sheriff Washington were dismissed from the

case on August 8, 2005, by order of the Honorable R. Bryan Harwell, United States District Judge.

On September 28, 2005, the remaining defendants filed a motion for summary judgment. By order filed on September 28, 2005, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the plaintiff was advised of the dismissal procedure and the possible consequences if he failed to adequately respond to the motion. The plaintiff filed a response to the defendants' motion on October 24, 2005, and the defendants filed a reply on October 28, 2005.

## **FACTS PRESENTED**

The plaintiff was arrested by defendant Deputy Page on October 20, 2003, for driving under suspension (def. m.s.j., ex. 3). The plaintiff pleaded guilty and was sentenced to 30 days in jail (pl. dep. 83). He does not claim that he was wrongfully arrested on that charge (pl. dep. 89). The night of the plaintiff's arrest, Deputy Page received a complaint stating that liquor had been stolen from the car of Ms. Carrie Riggins at her store, the Night Spot. On the way to the police station after arresting the plaintiff, Deputy Page stopped at the Night Spot, which was around the corner from where the plaintiff's car was stopped, to ask Ms. Riggins if she had found who had stolen the liquor. Ms. Riggins voluntarily identified the plaintiff as the person who had stolen her liquor (Page aff. ¶¶ 1-5; def. m.s.j., ex. 4). The plaintiff complains that Deputy Page wrongfully interrogated him about stolen beers and liquor without reading him his rights or producing any warrants (comp. § III). Deputy Page did not place the plaintiff under arrest at that time for the theft of the alcohol.

On or about October 24, 2003, the plaintiff was released from jail on bond for the driving under suspension charge. Two days later, Ms. Riggins signed a warrant for the arrest of the plaintiff for petit larceny and malicious injury to personal property (Page aff. ¶

2

6; def. m.s.j., ex. 5, 6). The plaintiff claims that Ms. Riggins did this at Deputy Page's "insistence." He further alleges that Deputy Page wrongfully arrested him for this charge because the warrant contained false information and was defective and that Deputy Page maliciously prosecuted him for the charge after Ms. Riggins failed to appear at trial. According to the plaintiff, the charge was dismissed with prejudice (comp. § III).

On May 8, 2004, the plaintiff was arrested by Deputy Page at approximately 11:30 p.m. for loitering at the Track Stop Store in Kingstree. The plaintiff claims the charge was unfounded because the store was still open at that time. He further claims that Deputy Page "roughly handcuffed" him and took him to jail without reading him his rights. He was given a ticket for loitering (def. m.s.j., ex. 8). The plaintiff spent three days in jail before making bond (comp. § III). He alleges that Deputy Page maliciously prosecuted him on the charge. The plaintiff was found not guilty by a jury on August 25, 2004.

On May 10, 2004, the plaintiff gave a statement to the Williamsburg County Sheriff's Department, alleging that Deputy Page was "hostile, belligerent, and seems compelled to prosecute me even if he violates the law" (comp., ex. 4).

The plaintiff alleges that defendant Sergeant Charlene Wilson "assisted Officer Page by lying, denying me phone call and causing me to be imprisoned for three days unnecessary, conspiracy" (comp. § III).

The plaintiff references two additional incidents involving Deputy Page. However, in his deposition, the plaintiff testified that the allegations involving a hit-and-run incident (pl. dep. 6, 9) and Deputy Page's handling of a domestic disturbance (pl. dep. 10-13) were not part of this lawsuit.

## APPLICABLE LAW

Federal Rule of Civil Procedure 56 states, as to a party who has moved for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that: (1) there is no genuine issue as to any material fact; and (2) that he is entitled to summary judgment as a matter of law. As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings; rather, he must demonstrate that specific, material facts exist which give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.,* 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds,* 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be

4

counted." *Anderson,* 477 U.S. at 248. Accordingly, when Rule 56(e) has shifted the burden of proof to the non-movant, he must provide existence of every element essential to his action which he bears the burden of adducing at a trial on the merits.

## ANALYSIS

As set forth by the defendants, the plaintiff's various factual allegations can best be categorized into the following alleged violations by Deputy Page: (1) failure to read the plaintiff his rights (presumably *Miranda* warnings) during each of the two arrests; (2) violation of his right to be free from excessive force; (3) violation of his Fourth Amendment right to be arrested only upon a warrant supported by probable cause or reasonable suspicion; and (4) malicious prosecution.

A criminal defendant's only remedy for a police officer's failure to read *Miranda* warnings is suppression of the alleged involuntary confession. *Miranda v. Arizona*, 384 U.S. 436, 444 (1966) (holding that "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination"). The plaintiff does not allege that Deputy Page elicited a confession, much less an involuntary one, from him during either of the arrests. Based upon the foregoing, the claim fails.

The plaintiff next claims that Deputy Page "roughly handcuffed" and "manhandled [him] with the cuffs tight as he could get them" (comp. § III). Where a plaintiff alleges that a police officer has unconstitutionally used excessive force, the officer's actions and judgment are measured by a standard of objective reasonableness. *Graham v. Connor*, 490 U.S. 386, 396-97 (1989). In *Carter v. Morris*, 164 F.3d 215(4th Cir. 1999), the Fourth Circuit Court of Appeals rejected as a matter of law a plaintiff's excessive force claim alleging that her handcuffs were too tight and the defendant officer pushed her legs as she

5

got into the police car. Similarly, the allegation in this case "is so insubstantial that it cannot as a matter of law support [his] claim." *Id.* at 219 n. 3.

The defendants next argue that they are entitled to qualified immunity on the plaintiff's claim that he was arrested without probable cause. Qualified immunity protects government officials performing discretionary functions from civil damage suits as long as the conduct in question does not "violate clearly established rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). This qualified immunity is lost if an official violates a constitutional or statutory right of the plaintiff that was clearly established at the time of the alleged violation so that an objectively reasonable official in the defendants' position would have known of it. *Id.*

In addressing qualified immunity, the United States Supreme Court has held that "a court must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all and, if so, proceed to determine whether that right was clearly established at the time of the alleged violation." *Wilson v. Layne*, 526 U.S. 603, 609 (1999); *see also Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 685 (4th Cir. 2000). Further, the Supreme Court held that "[d]eciding the constitutional question before addressing the qualified immunity question also promotes clarity in the legal standards for official conduct, to the benefit of both the officers and the general public." *Wilson*, 526 U.S. at 609. If the court first determines that no right has been violated, the inquiry ends there "because government officials cannot have known of a right that does not exist." *Porterfield v. Lott*, 156 F.3d 563, 567 (4th Cir. 1998).

An official's entitlement to qualified immunity is based upon "an objective reasonableness" standard. "The very idea of reasonableness requires that courts accord interpretive latitude to official judgments." *Torchinsky v. Siwinski*, 942 F.2d 257, 261 (4th Cir. 1991) (citing *Sevigny v. Dicksey*, 846 F.2d 953 (4th Cir. 1988)). "If reasonable mistakes

6

were actionable, difficult questions of discretion would always be resolved in favor of inaction, and effective law enforcement would be lost." *Id.*

The reasonableness of an officer's conduct does not turn on whether probable cause was, in fact, present. *Hunter v. Bryant*, 502 U.S. 224, 226-27 (1991). "The Supreme Court has held that when a police officer acts pursuant to a warrant, he is entitled to qualified immunity if he could have reasonably believed that there was probable cause to support the application." *Porterfield*, 156 F.3d at 570. "[I]t is inevitable that law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present, and . . . like other officials who act in ways they reasonably believe to be lawful[,] [they] should not be held personally liable." *Anderson v. Creighton*, 483 U.S. 635, 641 (1987).

In this case, a magistrate issued a warrant for the arrest of the plaintiff for both petit larceny and malicious injury to personal property with regard to the October 20, 2003, incident (def. m.s.j., ex. 5, 6). In *Torchinsky v. Siwinski*, 942 F.2d 257, 262 (4th Cir. 1991), the court stated, "When a police officer protects a suspect's rights by obtaining a warrant from a neutral magistrate, the officer should, in turn, receive some protection from suit under 42 U.S.C. §1983. Otherwise, the threat of liability would force officers to continuously second-guess the considered decisions of magistrates." The court further stated, "The presumption of reasonableness attached to obtaining a warrant can be rebutted where 'a reasonably well-trained officer in [the officer's] position would have known that his [application] failed to establish probable cause and that he should not have applied for the warrant.'" *Id*. at 262 (citing *Malley v. Briggs*, 475 U.S. 335, 345 (1986)).

An objective law enforcement officer could have reasonably believed that he had probable cause to arrest the plaintiff on each of the occasions at issue.[1] With regard

---

[1] The plaintiff admits that Deputy Page had probable cause to arrest him for driving under suspension (pl. dep. 89).

7

to the plaintiff's arrest for petit larceny and malicious injury to property, Deputy Page testified that prior to pulling over the plaintiff for failure to use his turn signal, he had received a call from Ms. Riggins regarding the theft of liquor from her car. Ms. Riggins voluntarily identified the plaintiff as the person who had stolen the liquor (Page aff. ¶¶ 4, 5). Deputy Page did not sign the warrants for the charges of petit larceny and malicious injury to personal property; they were signed by Ms. Riggins, and the magistrate approved the warrants with his signature (def. m.s.j., ex. 5, 6). The plaintiff has no evidence to support his allegation that Ms. Riggins pursued these warrants at the defendants' "insistence" (comp. § III).

With regard to the May 8, 2004, loitering incident, the plaintiff claims that officers at the scene told him and others that there could be no loitering at the Track Stop Store after the store closed. Thereafter, Deputy Page told the plaintiff that he was trespassing. According to the complaint, the plaintiff told Deputy Page that he could not possibly be loitering or trespassing because the store was open. Deputy Page then asked the plaintiff if he was going in the store, if he had sent someone in the store, or his reasons for being there (comp. § III). According to Deputy Page, he had received a call from dispatch saying that there had been an assault at the store. When he arrived to investigate the scene, he observed the victim of the assault in the street area. He then asked everyone who was not planning on going inside the gas station to buy something to immediately leave the premises or be deemed loitering. The plaintiff refused to leave, indicating that someone was inside the store buying something for him. Deputy Page went inside and asked if there was anyone there for the purpose of purchasing goods for the plaintiff, and the owner, who was the only person inside the store, said no. By that time, several people had gathered in the area around the plaintiff, and again Deputy Page asked them to leave, but the plaintiff refused. Accordingly, Deputy Page arrested the plaintiff for loitering (Page aff. ¶¶ 7-8; def. m.s.j., ex. 7). According to the defendants, Sergeant Wilson's only participation in the

above incidents was to book the plaintiff. The plaintiff has no evidence that the defendants conspired to violate his rights or maliciously prosecute him (def. reply, ex. A, pl. dep. 41-44). Based upon the foregoing, the defendants are entitled to qualified immunity.

Any claim for malicious prosecution fails because the plaintiff cannot show a lack of probable cause and malice. *See Lambert v. Williams*, 223 F.3d 257, 260-62 (4th Cir. 2000) (a malicious prosecution claim under Section 1983 is properly understood as a Fourth Amendment claim for unreasonable seizure that incorporates certain elements of the common law tort, including lack of probable cause); *Jordan v. Deese*, 452 S.E.2d 838, 839 (S.C. 1995) (six elements must be proven in a malicious prosecution action, including malice and lack of probable cause).

## **CONCLUSION AND RECOMMENDATION**

Wherefore, based upon the foregoing, it is recommended that the defendants' motion for summary judgment be granted.

> s/William M. Catoe
> United States Magistrate Judge

February 8, 2006

Greenville, South Carolina